# REVISED, February 2, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-41192
_____


ETHEL JONES,

                    Plaintiff-Appellee,

v.

GARY COLLINS, Superintendent of Texarkana Independent
School District

                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

January 9, 1998

Before KING, DUHÉ, and WIENER, Circuit Judges.

KING, Circuit Judge:

     Defendant-appellant Gary Collins, the superintendent of
Texarkana Independent School District, appeals the district
court's partial denial of his motion for summary judgment on the
ground that a fact issue exists as to whether he possesses
qualified immunity from liability for plaintiff-appellee Ethel
Jones's claim, asserted under 42 U.S.C. § 1983, that Collins
violated her First Amendment rights.  Because we find that the
evidence in the summary judgment record, construed in the light
most favorable to Jones, indicates that Collins did not violate
Jones's First Amendment right to free expression, we reverse the

district court's order denying Collins's motion for summary judgment on his defense of qualified immunity and remand for entry of judgment granting this portion of the motion.

## I.  FACTS & PROCEDURAL BACKGROUND

This case arises out of the transfer of plaintiff-appellee Ethel Jones from her position as principal of Dunbar Elementary School ("Dunbar") to the position of assistant principal of Westlawn Elementary School ("Westlawn") in July 1993.  Defendant-appellant Gary Collins, the superintendent of Texarkana Independent School District ("TISD"), recommended this transfer, and the TISD Board of Trustees (the "Board") approved it.

Jones served as Dunbar's principal from the 1986-87 school year through the 1992-93 school year.  Her performance evaluations for the 1987-88 through the 1990-91 school years reflect that Collins gave Jones ratings of "clearly outstanding" or "exceeds expectations" in most of the evaluation categories.

On February 22, 1992, Jones attended a Board retreat at which Board members discussed possible locations for a proposed alternative education program for the school district to cope with the educational needs of emotionally disturbed and at-risk students.  Jones later asked Collins if Dunbar was a potential site for the alternative education program.  Collins responded that this was possible because Dunbar had extra rooms available that could be allocated to the program.  Collins contends that he discussed the possibility of Dunbar serving as the site of the alternative education program with no one other than Jones.

2

In May or June of 1992, after Jones's conversation with Collins regarding the location of the alternative education program, representatives from the community appeared at a Board meeting and voiced opposition to the prospect of placing the alternative education program at Dunbar. The Board president informed the parents that the Board did not intend to place the alternative education program at Dunbar. Collins surmised that the parents must have received the information regarding the possibility of placing the program at Dunbar from Jones because he had discussed the matter with no one else. When confronted by Collins, Jones denied leaking information to the community.

In Jones's 1991-92 employment evaluation, Collins stated that Jones "[i]sn't supportive of controversial approaches [and] doesn't like to be in [the] line of fire on any decision." In an attachment to the evaluation, Collins explained that, after discussing with Jones the possibility of placing the alternative education program at Dunbar, various members of the faculty and parents of Dunbar students complained about locating the program at Dunbar. The attachment also stated the following with regard to the alternative education program's location:

> The Board of Trustees, when making decisions as to the utilization of facilities, makes their determination in the best interest of all students in this district. Before that decision is made, options will be discussed, alternatives weighed, and a rational decision arrived at by consensus. Up until that event occurs, you are to support the administration and Board of Trustees in their attempts to determine the best use of facilities for the students and instructional program of this district. You are not to work behind our backs in an effort to salvage what you consider the

3

>   most important use of a facility nor use other
>   individuals to carry out your point of view.

Collins recommended that Jones's contract be renewed for another year.

In Jones's evaluation for the 1992-93 school year, Collins rated Jones's performance in many evaluation categories as "unsatisfactory" and recommended that the district not renew her contract. In a memorandum accompanying the evaluation form, Collins listed a number of alleged deficiencies in Jones's performance, and discussed in particular her alleged "gamesmanship" in inciting unrest in the community regarding district policy affecting Dunbar. The evaluation states that Jones's "community involvement consisted of creating controversy over items [she] did not want on the Dunbar campus." The evaluation also reiterated Collins's belief that Jones had spoken negatively with members of the community regarding the possibility of placing the alternative education program on the Dunbar campus.

Jones's contract with TISD covering the 1992-93 and 1993-94 school years provided that Jones could be transferred between administrative positions within the district at the sole discretion of the superintendent so long as her salary was not reduced as a result of the transfer. On July 21, 1993, Collins attempted to transfer Jones to a teaching position. However, counsel for the school district informed him that, under the terms of the contract then in effect between Jones and TISD, Collins could not transfer Jones from an administrative position

to a teaching position.  Collins thereafter reassigned Jones to the position of assistant principal of Westlawn.

Jones exhausted her administrative remedies and, on September 29, 1995, filed suit against TISD and Collins both in his individual capacity and his official capacity as superintendent of TISD (collectively "Defendants").  Jones alleged various violations of the U.S. Constitution, including claims that her transfer deprived her of property and liberty interests without due process and a claim that her reassignment constituted retaliation for exercise of her First Amendment right to free speech.  Jones also asserted parallel claims under the Texas Constitution.  Defendants answered and affirmatively pleaded the defense of qualified immunity on behalf of Collins in his individual capacity.  Defendants moved for summary judgment on all claims, including Collins's claim of qualified immunity.  The district court granted Defendants' motion for summary judgment except as to Jones's First Amendment retaliation claim and Collins's defense of qualified immunity.  Collins appeals the district court's refusal to grant summary judgment on Jones's First Amendment retaliation claim on grounds of qualified immunity.

## II.  APPELLATE JURISDICTION

Although Jones has not argued that this court lacks jurisdiction over the instant appeal, we nonetheless address the issue sua sponte.  See Joseph v. City of New Orleans, 110 F.3d 252, 253 (5th Cir. 1997); Pemberton v. State Farm Mut. Auto. Ins.

5

<u>Co.</u>, 996 F.2d 789, 791 (5th Cir. 1993). The Supreme Court has held that "[a]ppeals from district court orders denying summary judgment on the basis of qualified immunity are immediately appealable under the collateral order doctrine, when based on an issue of law." <u>Cantu v. Rocha</u>, 77 F.3d 795, 802 (5th Cir. 1996) (citing <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)). In this context, an appeal is based on "issues of law" if the issues it raises "concern only application of established legal principles, such as whether an official's conduct was objectively reasonable in light of clearly established law, to a given (for purposes of appeal) set of facts." <u>See</u> <u>id.</u> (citing <u>Johnson v. Jones</u>, 515 U.S. 304, 313 (1995). However, if the appeal involves a matter of evidentiary sufficiency, i.e., if the party moving for summary judgment merely disputes the district court's determination that the nonmoving party may be able to prove at trial a fact that is material to the appellant's entitlement to qualified immunity, then the district court's denial of summary judgment is not immediately appealable. <u>See</u> <u>id.</u>

Collins contends on appeal that the summary judgment evidence, viewed in the light most favorable to Jones, indicates that he did not violate Jones's constitutional rights. He does not contend that the district court erroneously determined that the summary judgment record indicates that disputes exist as to factual issues material to Jones's claim. We therefore possess jurisdiction over Collins's appeal and proceed to its merits.

## III.  STANDARD OF REVIEW

"This court reviews de novo the denial of a public official's motion for summary judgment predicated on qualified immunity."  <u>Southard v. Texas Bd. of Criminal Justice</u>, 114 F.3d 539, 548 (5th Cir. 1997); <u>see</u> <u>also</u> <u>Johnston v. City of Houston</u>, 14 F.3d 1056, 1059 (5th Cir. 1994).  We therefore apply the same criteria used by the district court in the first instance.  <u>See</u> <u>Texas Manufactured Housing Ass'n v. City of Nederland</u>, 101 F.3d 1095, 1099 (5th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 2497 (1997).  Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986).

## IV.  ANALYSIS

While the nature of Jones's First Amendment claim is not altogether clear from her pleadings at the district court level and her brief on appeal, her claim appears to be that Collins retaliated against her based upon his perception that she spoke negatively to members of the local community about the prospect of placing the TISD alternative education program at Dunbar. With this understanding of the claim in mind, we turn to the legal standard applicable in evaluating Collins's entitlement to qualified immunity from liability based on the claim.

7

## A. Qualified Immunity Standard

A determination of whether a public official is entitled to qualified immunity from liability under § 1983 potentially involves a two-step analysis.  First, if the official's conduct did not violate a clearly established constitutional right, the official is entitled to qualified immunity.  See Nerren v. Livingston Police Dep't, 86 F.3d 469, 473 (5th Cir. 1996).  That is, in order for immunity not to attach, the official's conduct must have violated a right recognized under current constitutional law, and that right must have been clearly established at the time of the official's conduct.  See Siegert v. Gilley, 500 U.S. 226, 231-32 (1991) ("Once a defendant pleads a defense of qualified immunity, on summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether the law was clearly established at the time an action occurred. . . .  A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is clearly established at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." (internal quotation marks and alteration omitted)).  Second, even if the official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable.  See Nerren, 86 F.3d at 473. We need not reach the second step of this analysis because the summary judgment evidence, construed in the light most favorable

8

to Jones, indicates that Collins did not violate Jones's First Amendment right to free expression.

### B. First Amendment Law

A state may not deny an individual public employment or benefits related thereto based on the individual's exercise of her First Amendment right to free expression even when the individual lacks a liberty or property interest in the employment or related benefit. See Rankin v. McPherson, 483 U.S. 378, 383–84 (1987) ("Even though McPherson was merely a probationary employee, and even if she could have been discharged for any reason or for no reason at all, she may nonetheless be entitled to reinstatement if she was discharged for exercising her constitutional right to freedom of expression."); Connick v. Myers, 461 U.S. 138, 143-45 (1983); Pickering v. Board of Educ., 391 U.S. 563, 568 (1968); Thompson v. City of Starkville, 901 F.2d 456, 460 (5th Cir. 1990). However, a government's interest in insuring that its agencies perform the tasks assigned to them by law in the most efficient manner possible is substantial and in certain circumstances justifies placing restrictions upon public employees' freedom of expression. See Waters v. Churchill, 511 U.S. 661, 675 (1994) (plurality opinion) (O'Connor, J.) ("The government cannot restrict the speech of the public at large just in the name of efficiency. But where the government is employing someone for the very purpose of effectively achieving its goals, such restrictions may well be appropriate.").

9

In light of the competing interests of government employees in free expression and the government in efficiency of its operations, the Supreme Court has held that the First Amendment precludes retaliation against a public employee based upon her expression only if that expression satisfies two criteria. First, the expression must relate to a matter of public concern. See Connick, 461 U.S. at 146; Kinsey v. Salado Indep. Sch. Dist., 950 F.2d 988, 992 (5th Cir. 1992). Second, the employee's interest in "commenting upon matters of public concern" must outweigh the public employer's interest "in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568; see also Kinsey, 950 F.2d at 992. If a public employee establishes that her expression is protected by meeting the above two criteria, she must still prove that her expression caused the retaliatory act of which she complains in order to establish a violation of the First Amendment. See Kinsey, 950 F.2d at 993.

In this case, Jones contends that she never made any public comment about the prospect of placing the alternative education program on the Dunbar campus and that Jones retaliated against her based upon his perception that she spoke out negatively regarding this matter. Assuming for the sake of argument that Jones's expression as perceived by Collins would have been subject to constitutional protection (i.e., the negative comments perceived by Collins related to a matter of public concern and Jones's interest in making them outweighed TISD's interest in

10

efficiently providing educational services), retaliation based on this perception, in the absence of any actual expression by Jones that is subject to First Amendment protection, does not constitute a constitutional violation.

In Barkoo v. Melby, 901 F.2d 613 (7th Cir. 1990), the Seventh Circuit addressed a factual scenario analogous to the one at issue here:  the plaintiff alleged that she was constructively discharged from her position as a communications operator for the Village of Skokie Police Department based upon her supervisors' erroneous belief that she had discussed a matter relating to the department with local media.  See id. at 614-16.  The court concluded that the plaintiff could not establish a violation of her First Amendment right to free expression because she had not actually engaged in any protected First Amendment activity.  See id. at 619.  The court observed:

> To the extent Barkoo alleges that her employers retaliated against her because they thought she was engaged in First Amendment protected speech on an issue of public concern, we reject the notion that this allegation brings her claim within the requirements of § 1983.  Every § 1983 case relating to workplace freedom of speech, from Connick on down, discusses the actual speech engaged in by the employee.  Barkoo not only admits, she insists that she did not provide any information to the press.  Barkoo provides no authority for the proposition that her free speech rights are deprived in violation of § 1983 when the speech at issue admittedly never occurred.

Id.

In Fogarty v. Boles, 121 F.3d 886 (3d Cir. 1997), the Third Circuit reached a similar conclusion regarding a claim that a public school teacher was punished based upon the school

11

principal's erroneous belief that the teacher had contacted the press about a matter of public interest at the school. See id. at 887. The court held that the teacher "fail[ed] to meet his burden of proving a violation of his free speech rights [because] he denie[d] contacting, attempting to contact, or having any intention of contacting the press." Id. The court noted that, in Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977), the Supreme Court held that a plaintiff alleging retaliation based upon the plaintiff's exercise of her First Amendment rights bears the burden of showing, among other things, "'that his conduct was constitutionally protected.'" Fogarty, 121 F.3d at 890 (quoting Mt. Healthy, 429 U.S. at 287). The court reasoned that the teacher could not "sustain that burden of proof because there was no conduct that was constitutionally protected--indeed, there was no conduct-- period." Id.

The instant case is analogous to Barkoo and Fogarty in all material respects, and we find the reasoning of the Seventh and Third Circuits persuasive. Jones contends that she never spoke out--positively or negatively--regarding the prospect of placing the alternative education program on the Dunbar campus. The fact that Collins transferred her on the basis of a mistaken belief that she spoke out in a manner that we assume for the sake of argument would have been constitutionally protected fails to establish a violation of Jones's First Amendment rights. An asserted "bad motive" on the part of Collins cannot of itself

12

form the basis of a First Amendment violation.  See id. at 890.

"'[A] free speech claim depends on speech, and there was none in this case.'"  Id. (quoting Pro v. Donatucci, 81 F.3d 1283, 1292 (3d Cir. 1996) (Roth, J., dissenting)).

Jones argues, however, that her silence on the issue of the location of TISD's alternative education program is entitled to First Amendment protection.  In support of this contention, she relies on Wooley v. Maynard, 430 U.S. 705 (1977), in which the Supreme Court invalidated a New Hampshire statute requiring residents to display the state motto of "Live Free or Die" on their license plates.  While it is true that silence in the face of an illegitimate demand for speech is subject to First Amendment protection, see id. at 714, this principle is inapplicable here.  Jones does not contend that Collins made a demand--legitimate or otherwise--that she speak out in favor of the possibility of placing the alternative education program on the Dunbar campus.  Indeed, she specifically contends that he did not instruct her to speak on this matter.[1]  Therefore, Jones's reliance on Wooley is inapposite.

Jones's silence in the absence of a demand for speech likewise does not constitute a form of symbolic expression

---

[1]  Moreover, while Jones alleges that Collins transferred her in part "because [she] refused to publicly endorse his plans for Dunbar," she directs us to no summary judgment evidence supporting this allegation.  The summary judgment evidence cited by Jones indicates only that Collins may have transferred her based upon his belief that she had spoken out negatively to members of the community regarding the prospect of placing the alternative education program on the Dunbar campus.

13

warranting First Amendment protection.  We reach this conclusion because "[t]he First Amendment 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'"  Connick, 461 U.S. at 145 (quoting Roth v. United States, 354 U.S. 476, 484 (1957)).  The goal of unfettered interchange of ideas is not furthered by "conduct without substantial communicative intent and impact."  Smith v. Goguen, 415 U.S. 566, 586 (1974) (White, J., concurring).  Accordingly,

> [f]or activities to constitute expressive conduct and fall within the scope of the First Amendment, they must be sufficiently imbued with elements of communication. In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we ask whether an intent to convey a particularized message was present and whether the likelihood was great that the message would be understood by those who viewed it.

Cabrol v. Town of Youngsville, 106 F.3d 101, 109 (5th Cir. 1997) (internal quotation marks and citations omitted).

Nothing in the summary judgment record indicates that Jones intended her silence on the issue of placement of TISD's alternative learning program to constitute a statement of any sort.  Nor does the summary judgment record provide any indication that anyone, Collins included, had reason to perceive it as such.  Jones has therefore not alleged that she engaged in any expressive conduct potentially subject to First Amendment protection.  Cf. Langford v. Lane, 921 F.2d 677, 679 (6th Cir. 1991) (applying the public interest and Pickering/Connick balancing test to an employer's express refusal to speak with her

14

supervisor); <u>Nicholson v. Gant</u>, 816 F.2d 591, 599 (11th Cir. 1987) (concluding that the plaintiff had engaged in speech warranting First Amendment protection where she "<u>clearly expressed</u> her desire not to read [a] prepared statement at [a] political rally" (emphasis added)); <u>Sykes v. McDowell</u>, 786 F.2d 1098, 1104 (11th Cir. 1986) ("A public employee who <u>positively asserts</u> the right not to speak when ordered to support his employer [politically] is within the protection of the first amendment." (emphasis added)).

In sum, the summary judgment record construed in the light most favorable to Jones indicates that Collins's transfer of Jones from her position as principal of Dunbar did not violate Jones's constitutional rights, much less any rights clearly established at the time of the transfer. Collins is therefore entitled to summary judgment on the basis of qualified immunity.

## V.  CONCLUSION

For the foregoing reasons, we REVERSE the order of the district court insofar as it denied Collins's motion for summary judgment on his defense of qualified immunity and REMAND for entry of judgment granting this portion of the motion. Costs shall be borne by Jones.

15