REVISED, October 13, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-40071
Summary Calendar

_____

Robert Jack HAYTER,

Plaintiff - Appellee,

VERSUS

CITY OF MOUNT VERNON, et al.

Defendants,

Harold SULLIVAN, Jr., Franklin County Reserve Deputy,

Defendant - Appellant,

Tyler BANNISTER, Mount Vernon Police Officer,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Eastern  District of Texas

_____

September 21, 1998

Before REYNALDO G. GARZA, JOLLY, and WIENER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

### *Factual and Procedural Background*

At approximately 1:45 a.m. on Sunday, June 2, 1996, Defendant Tyler Bannister, a police officer for the city of Mount Vernon, and Defendant Harold Sullivan, a reserve deputy for Franklin County, stopped Plaintiff Robert Jack Hayter's vehicle because they claim he had swerved in the road twice.  Hayter and his friend, Joshua Scott Mahaffey, had been watching movies at Mahaffey's grandmother's house when they decided to drive to a nearby Texaco station to buy cigarettes.  They were on their way back to the house when the defendants pulled them

1

over. Hayter claims that he did not swerve in the road. The defendants did not charge Hayter with swerving in the road.

Sullivan asserts that, as he approached Hayter's car, he smelled a strong odor of alcohol coming from inside the car and observed a pipe on the floorboard of the passenger's side of the car. Hayter and Mahaffey had been drinking earlier in the night, but Hayter claims that he was not drunk or impaired when the defendants pulled him over. In his testimony, Bannister confirmed this claim by admitting that Hayter did not exhibit any signs of intoxication and appeared to be sober at the time.

Bannister and Sullivan asked if they could search Hayter's car, and Hayter consented. Bannister found a small plastic bag containing a green leafy herbal substance. Upon his initial visual inspection, Bannister suspected that the substance might be marijuana. Sniffing the bag, however, revealed to Bannister that the substance did not smell anything like marijuana. Hayter attempted to explain to the defendants that the substance was actually a legal herb known as "Inda-Kind," which he had ordered out of a magazine as a smoking alternative to help him quit smoking cigarettes.

Bannister and Sullivan then read Hayter his rights and placed him in handcuffs. The defendants placed Hayter in jail at approximately 2:30 a.m. that Sunday morning. About two hours later, they brought Hayter out of his cell and up to the front office. The defendants offered Hayter a cigarette and repeatedly asked him who was selling drugs around Mount Vernon. Hayter claims that both defendants kept asking him the same questions over and over again. Each time, Hayter told the defendants that he did not know who might be selling drugs in Mount Vernon. Later, the defendants returned Hayter to his cell.

Later that day, Hayter's wife brought the original bag of Inda-Kind that Hayter had purchased to the jail. She showed it to Sullivan, who testified that at that point he had very little doubt that the substance they had found in Hayter's car was not marijuana and that Hayter was innocent. Nevertheless, Sullivan did not instruct anyone at the jail to release Hayter.

2

Hayter was not allowed to use a telephone until approximately 5:30 or 6:00 p.m. Sunday evening. The police finally released Hayter at 5:00 p.m. Monday evening, after lab tests indicated that the substance the defendants found in Hayter's car was not marijuana. The charges against Hayter were dismissed. Hayter spent a total of approximately 39 hours in jail, and claims that his employer fired him because he had been arrested and did not show up to work while he was in jail.

On March 17, 1997, Hayter filed suit under 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Texas, Texarkana Division, alleging that Bannister and Sullivan made an unlawful and warrantless arrest, thereby depriving him of his Fourth Amendment rights. Hayter further alleged that the City of Mount Vernon and Franklin County empowered their officers with unfettered discretion to make warrantless arrests based upon less than probable cause, inadequately trained Bannister, and did not provide adequate supervision of Bannister. Hayter also asserted a pendent state law claim against Bannister for malicious prosecution.

On November 6, 1997, a magistrate judge recommended that the district court grant the City's and County's summary judgment motions. The magistrate found that Hayter had failed to show that the City or County had adopted and practiced a custom or official policy which deprived Hayter of his constitutional rights, as required for municipal liability under § 1983. Furthermore, the magistrate found that Hayter had failed to show that the City and/or the County improperly trained Bannister and Sullivan or provided inadequate supervision.

In contrast, the magistrate recommended that the district court deny Bannister's and Sullivan's summary judgment motions, finding that genuine issues of material fact existed as to the issue of qualified immunity, upon which the defendants had based their motions. The magistrate found that Hayter had presented sufficient evidence, primarily in the form of an expert's affidavit, that (1) no reasonable police officer would subject a citizen to a warrantless arrest based on a visual inspection of Inda-Kind; (2) no reasonable officer could believe that he or she had probable cause to believe that the Inda-Kind was marijuana; and (3) under Hayter's

version of events, the defendants did not possess sufficient facts to give rise to a reasonable suspicion that Hayter had violated any law to justify the initial stop. As such, the magistrate found that Hayter had met his burden of proof, so that the issue of whether Bannister's and Sullivan's conduct was reasonable would have to be decided by a jury. Similarly, the magistrate recommended that the district court deny Bannister's summary judgment motion as to the malicious prosecution claim because fact issues remained as whether Bannister acted with malice and/or without probable cause.

The district court adopted the magistrate's Report and Recommendation on January 5, 1998. Sullivan had previously filed objections to the Report and Recommendation, but Bannister did not. Sullivan and Bannister both filed notices of their interlocutory appeal on January 14, 1998.

*Discussion*

Sullivan and Bannister argue on appeal that the magistrate erred in overruling their objections to the affidavit of Hayter's expert, and that the district court erred in denying their motions for summary judgment. In addition, Bannister argues that the district court erred in denying his motion for summary judgment on Hayter's state law malicious prosecution claim. Quite predictably, Hayter responds that the district court did not err in these regards, but also raises a preliminary question as to whether this Court has jurisdiction to hear this interlocutory appeal.

**A.** *Jurisdiction*

This Court has jurisdiction to hear this interlocutory appeal. Section 1291 of Title 28 of the United Stated Code gives courts of appeals jurisdiction over "all final decisions" of district courts, except those designated for appeal to the Supreme Court. 28 U.S.C. § 1291. In *Cohen v. Beneficial Indust. Loan Corp.*, the Supreme Court described a "small class" of district court decisions that, though short of final judgment, are immediately appealable because they "finally

determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole cause is adjudicated." 337 U.S. 541, 546 (1949).

In a later case, the Supreme Court held that denial of a claim of qualified immunity, to the extent that it turns on an issue of law, falls within the class of cases appealable within the meaning of § 1291 notwithstanding the absence of a final judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see also Johnson v. Jones*, 515 U.S. 304, 311-12 (1995). The rationale behind this holding is that this kind of summary judgment order is effectively unreviewable, in a sense, because review after trial would come too late to vindicate one important purpose of qualified immunity, *i.e.*, protecting public officials, not simply from liability, but also from standing trial or facing the other burdens of litigation, which can distract officials from performing governmental duties, inhibit discretionary action, and deter able people from public service. *Id.* at 312; *Mitchell*, 472 U.S. at 525-27.

Recently, in *Behrens v. Pelletier*, 516 U.S. 299 (1996), the Supreme Court settled the issue as far as this case is concerned. In *Behrens*, the Court explained its prior holding in *Johnson*:

> Denial of summary judgment often includes a determination that there are controverted issues of material fact, and *Johnson* surely does not mean that every such denial of summary judgment is nonappealable. *Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly "separable" from the plaintiff's claim, and hence there is no "final decision" under *Cohen* and *Mitchell*. *Johnson* reaffirmed that summary-judgment determinations are appealable when they resolve a dispute concerning an "abstract issu[e] of law" relating to qualified immunity--typically, the issue whether the federal right allegedly infringed was "clearly established[.]"

516 U.S. at 312-313 (citations omitted). The Court added that "*Johnson* permits petitioner to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the *Harlow* standard of 'objective legal reasonableness.'" *Id.* at 313.

**5**

Hayter's appeal falls squarely within the Supreme Court's description of claims that *Johnson* permits a public official to pursue on interlocutory appeal. The actions and conduct of the parties involved were not the subject of the material issue of genuine fact which the magistrate found precluded summary judgment. Instead, the disputed question was whether or not the defendants' conduct, *i.e.*, their actions based on their belief that the substance they found in Hayter's car was marijuana, was reasonable. As such, the magistrate's ruling is precisely the type that the Supreme Court noted was appealable; therefore, this Court has jurisdiction to hear this appeal. *See Jones v. Collins*, 132 F.3d 1048, 1051 (5th Cir. 1998) ("In this context, an appeal is based on 'issues of law' if the issues it raises 'concern only application of established legal principles, such as whether an official's conduct was objectively reasonable in light of clearly established law, to a given (for purposes of appeal) set of facts.'").

## B.      *The Expert's Affidavit*

Trial courts have broad discretion in rulings on the admissibility of expert opinion evidence, which the court of appeals will not disturb unless manifestly erroneous. *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 180 (5th Cir. 1995). Expert opinion testimony is admissible if it is helpful to the jury in understanding the evidence or determining a fact in issue. FED. R. EVID. 702. Bannister and Sullivan argue that the magistrate should have stricken the affidavit of Hayter's law enforcement expert because it failed to set forth qualifications sufficient to establish him as an expert and because it set forth the expert's opinion in a conclusory fashion. *See Orthopedic & Sports Injury Clinic v. Wang Lab., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991) (noting that "affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment[,]" and that "[w]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."). We disagree with the defendants' interpretation of the expert's affidavit; therefore, we find that the magistrate did not err in overruling the defendants' objections.

The magistrate's decision to overrule the defendants' objections to the expert affidavit was

not manifestly erroneous or an abuse of discretion. *See Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 280 n.32 (5th Cir.) (explaining that the "manifest error" standard is harmonious with the "abuse of discretion" standard as applied to this issue in other Fifth Circuit cases), *cert. denied*, 484 U.S. 851 (1987). The affidavit sufficiently states the expert's credentials to qualify him as an expert, noting that the expert has basic, intermediate, and advanced law enforcement certifications issued by the State of Texas as well as an Associate Degree (major in criminal justice/law enforcement) from Panola Junior College. The affidavit further states that the expert was trained in the requirements for a lawful arrest and the identification of various controlled substances, including marijuana.

In addition, the affidavit stated sufficient relevant facts in connection with the expert's conclusion that no reasonable officer could believe that he or she had probable cause for an arrest for possession of marijuana based on the appearance and odor of the Inda-Kind. The expert tied his opinion to the specific fact that the defendants found the substance in a plastic sandwich bag under the visor in Hayter's car. The expert further stated that the substance did not look or smell anything like marijuana, which he had confiscated on many occasions during his many years of work in the law enforcement field. Under these circumstances, we cannot say that the magistrate's overruling of the defendants' objections to the expert's affidavit was manifestly erroneous.

### 3.      *Summary Judgment*

This court reviews *de novo* the denial of a motion for summary judgment predicated on qualified immunity. *Jones*, 132 F.3d at 1052. We apply the same criteria used by the district court in the first instance. *Id.* We review the "evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party." *Gibson v. Rich*, 44 F.3d 274, 276 (5th Cir. 1995). Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

7

of law." FED. R. CIV. P. 56(c).

### a. Qualified Immunity

A determination of whether a police officer is entitled to qualified immunity from liability under § 1983 involves a two-step analysis. *Jones*, 132 F.3d at 1052. The first step relates to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Id.* Next, even if a public official's conduct has violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his or her conduct was objectively reasonable. *Id.*

The magistrate did not err in determining that genuine issues of material fact with regard to the applicability of qualified immunity precluded summary judgment. The parties do not dispute that Hayter has alleged the violation of a clearly established constitutional right, *i.e.*, the right to be free from unlawful arrests or detentions under the Fourth Amendment. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992). Turning to the second step of the qualified immunity analysis, it is clear that Hayter satisfied his burden of submitting evidence sufficient to create a genuine issue of material fact about whether the defendants' conduct was objectively unreasonable. *See Gibson*, 44 F.3d at 277 ("When a proper motion for summary judgment is made, the non-moving party must set forth specific facts showing that there is a genuine issue for trial."). Both sides submitted affidavits on the issue: Hayter's law enforcement expert asserted that the defendants' conduct was objectively unreasonable and the defendants' law enforcement experts asserted that the defendants' conduct was objectively reasonable. Particularly when viewed in the light most favorable to Hayter, as the non-movant, the evidence obviously creates a disputed issue over the reasonableness of the defendants' conduct. We cannot say that it would be unreasonable for a jury to choose to believe Hayter's expert rather than the defense's experts; therefore, we find that the district court did not err in denying the defendants' motions for summary judgment. *See Id.* ("A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Material facts are facts that might affect the outcome of the suit under the governing law.")

### b. Malicious Prosecution

Similarly, the district court did not err in denying Bannister's summary judgment motion with regard to Hayter's malicious prosection claim. To prevail on a malicious prosecution claim in Texas, the Fifth Circuit requires the plaintiff to show that (1) a criminal action was commenced against him; (2) the prosecution was caused by the defendant or with his aid; (3) the action terminated in the plaintiff's favor; (4) the plaintiff was innocent; (5) the defendant acted without probable cause; (6) the defendant acted with malice; and (7) the criminal proceeding damaged the plaintiff. *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994). As the magistrate correctly noted, the same fact issue that precludes summary judgment based on qualified immunity applies to the question of whether Bannister acted without probable cause.

Furthermore, although the magistrate noted that the question of malice was a closer call, we cannot say that the denial of summary judgment in this regard was erroneous. Under Texas law, malice may be inferred from the lack of probable cause or from a finding that the defendant acted in reckless disregard of the other person's rights. *Brown v. United States*, 653 F.2d 196, 199 (5th Cir. Unit A 1981), *cert. denied*, 456 U.S. 925 (1982). In finding a genuine issue of material fact with regard to the malice element, the magistrate noted Hayter's assertions that Bannister arrested him without probable cause, interrogated him, and left him sitting in jail for approximately thirty-nine hours even though he had no reason to doubt Hayter's explanation regarding what the substance was. The record contains evidence supporting these assertions, including Bannister's admission that he had no reason to doubt Hayter's explanation of what the substance was. Also, as noted, fact issues remain as to whether Bannister acted without probable cause. Accordingly, we cannot say that it would be unreasonable for a jury to find the malice element satisfied. As such, the district court did not err in denying Bannister's summary judgment motion with regard to Hayter's claim for malicious prosecution.

### *Conclusion*

The district court did not err in denying the defendants' summary judgment motions.

Genuine issues of material fact exist regarding whether the defendants' conduct was objectively reasonable in light of clearly established law; therefore, summary judgment was not warranted on that basis. Similarly, genuine issues of material fact exist regarding whether Bannister acted without probable cause and/or with malice; therefore, summary judgment was not warranted as to Hayter's malicious prosecution claim. Accordingly, we AFFIRM the district court's decision adopting the magistrate's recommendations.

AFFIRMED.