Revised March 12, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-41015

DWIGHT HARRIS; GENE MARTIN,

Plaintiffs - Appellants,

VERSUS

VICTORIA INDEPENDENT SCHOOL DISTRICT; PAUL KORNFUEHRER, in his official and individual capacities; CLAY CAIN, in his official and individual capacities; IVAN GREEN, in his official and individual capacities; RANDY POLLARD, in his official and individual capacities; MARGARET EASLEY, in her official capacity only; REUBAN MURRAY, in his official capacity only; THERESA GUITIERREZ, in her official capacity only; ROBERT P BREZINA, in his official and individual capacities,

Defendants - Appellees.

Appeal from the United States District Court
for the Southern District of Texas

March 4, 1999

Before SMITH, DUHÉ, AND WIENER, Circuit Judges.

JOHN M. DUHÉ, JR., Circuit Judge:

This appeal arises from the reprimand and transfer of two teachers at Victoria High School ("VHS"), Dwight Harris and Gene Martin (collectively "Plaintiffs"), as a result of their speech at a December 8, 1995 committee meeting. Robert Brezina, Superintendent of the Victoria Independent School District

("VISD"), reprimanded the Plaintiffs and transferred them to different campuses during the 1994-95 school year because of their speech. After the VISD Board of Trustees affirmed Superintendent Brezina's decision, the Plaintiffs sued Brezina, members of the Board[1], and VISD (collectively "Defendants"), alleging that they were transferred and reprimanded in violation of their First Amendment rights. The district court granted the Defendants' Motion For Summary Judgment on the ground that the Plaintiffs did not speak on a matter of public concern, and the Plaintiffs appealed. Because we hold that the Plaintiffs engaged in protected speech, the Defendants are not entitled to qualified or absolute immunity, and the Board of Trustees' actions were pursuant to official policy, we reverse and remand for further proceedings.

## BACKGROUND

In the beginning of the 1995-96 school year, there was an escalating conflict at VHS concerning the performance rating of the school and its principal, Melissa Porche. At the same time, Harris and Martin's colleagues elected them faculty representatives of VHS's site based decision-making committee ("SBDM"). The SBDM is part of a program created by the Texas Legislature to improve the quality of public schools through increased input from multiple

___

[1]The Board of Trustees Defendants are Paul Kornfuehrer, Clay Cain, Ivan Green, Randy Pollard, Margaret Easley, Reuban Murray, and Theresa Guitierrez.

sources.[2]  Each SBDM includes faculty representatives, parents, community members and business representatives.

In the fall semester, Harris and Martin met with Brezina and expressed the faculty's concerns about Principal Porche and gave Brezina a memorandum outlining them.  As a result of this meeting, Superintendent Brezina hired a consultant to work with the SBDM, the faculty and Porche to improve the situation.  After Brezina received the consultant's report, he formed a sub-committee of the SBDM to create an improvement plan for VHS.  Brezina appointed all of the faculty members who were SBDM members, including Harris and Martin, to serve on this newly formed Internal Component Committee ("ICC").

The ICC distributed its improvement plan in Mid-October, but by the December 8, 1995 meeting of the ICC the situation at VHS had not improved.  Part of the December 8th meeting was set aside to discuss the implementation of the improvement plan and its progress.  Harris reported that many of the faculty members felt Porche was not following the plan, and that VHS needed a new principal to improve the situation.  Martin agreed and added if Brezina did not do something, the faculty would revolt.  Martin and Harris also called individual VISD Trustees relaying the same message.

After the December 8th meeting, Brezina reprimanded both

---

[2]See Tex. Educ. Code Ann. § 11.253 (Vernon 1996).

Plaintiffs and transferred Harris to another high school to teach the same subjects and Martin to a guidance center to teach new subjects to middle school students. The VISD Board of Trustees affirmed Brezina's decision in a grievance hearing.

After the Board's affirmance, the Plaintiffs sued, alleging the transfers were in retaliation for their exercise of protected speech. The district court granted the Defendants' Motion For Summary Judgment ruling that while the Plaintiffs' transfer was an adverse employment decision, they had not spoken on a matter of public concern. The Plaintiffs appealed.

## DISCUSSION

### I.  First Amendment Claim

The Plaintiffs contend their speech was on a matter of public concern. The Defendants argue the Plaintiffs' speech was not on a matter of public concern, and alternatively, that the Plaintiffs did not suffer an adverse employment decision.

This court reviews the district court's determination de novo. See La. Bricklayers & Trowel Trades Pension & Welfare Fund v. Alfred Miller General Masonry Contracting Co., 157 F.3d 404, 407 (5th Cir. 1998); see also Willis v. Roche Biomedical Laboratories, Inc., 61 F.3d 313, 315 (5th Cir. 1995). We must determine whether the pleadings and other summary judgment evidence demonstrate there is no genuine issue as to any material fact, and whether the Defendants are entitled to judgment as a matter of law. Id. at

4

1371.  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  See Victor v. McElveen, 150 F.3d 451, 454 (5th Cir. 1998) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

The government may not constitutionally compel persons to relinquish their First Amendment rights as a condition of public employment.  E.g., Keyishian v. Board of Regents of the Univ. of the State of N.Y., 385 U.S. 589 (1967).  The Plaintiffs must satisfy four elements to recover for a First Amendment retaliation claim.  First, the Plaintiffs must suffer an adverse employment decision.  See Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997).  Second, the Plaintiffs' speech must involve a matter of public concern.  See Thompson v. City of Starkville, 901 F.2d 456, 460 (5th Cir. 1990) (citing Connick v. Meyers, 461 U.S. 138, 147 (1983)).  Third, the Plaintiffs' interest in commenting on matters of public concern must outweigh the Defendants' interest in promoting efficiency.  Id. (citing Pickering v. Board of Education, 391 U.S. 563, 568 (1968)).  Fourth, the Plaintiffs' speech must have motivated the Defendants' action.  Id.  (citing Mt. Healthy City School Dist. v. Doyle, 429 U.S. 274, 287 (1977)). Because it is undisputed that Plaintiffs' transfers and reprimands were motivated by the Plaintiffs' speech at the December 8th meeting, we address only the first three requirements specifically.[3]

_____

[3]Superintendent Brezina's testimony that he transferred the Plaintiffs because of their conduct at the December 8th meeting is

5

**A. Did the Plaintiffs suffer an adverse employment action?**

Superintendent Brezina, in mid-term, transferred Harris to another high school to teach the same subjects and Martin to an alternative learning center for disruptive students to teach subjects and grade levels he had not taught before. Additionally, Brezina reprimanded the Plaintiffs in their transfer letters, and included the letters in the Plaintiffs' personnel files.[4] Subsequently, the Board of Trustees affirmed Brezina's actions in a grievance hearing.

The district court held that these facts constituted an adverse employment decision, and we agree. We recognize that federal courts should be extremely hesitant "to invade and take over" in the area of education; a federal court is not the appropriate forum in which to seek redress over "faculty disputes concerning teaching assignments, room assignments, administrative duties, classroom equipment, teacher recognition, and a host of other relatively trivial matters."  Dorsett v. Board of Trustees for States Colleges & Universities, 940 F.2d 121, 123-24 (5th Cir.

---

undisputed.

[4]Superintendent Brezina's January 8, 1995 letters to Harris and Martin stated:
[r]ecent events, statements and other conduct on your part have led me to the conclusion that you are unable and/or unwilling to maintain the commitment you made to these goals and to the improvement process.  It is apparent to me that neither the team nor I will be able to bring about a resolution that will satisfy you and remove or alleviate your discontent.

6

1990)(citing <u>Connick v. Myers</u>, 461 U.S. 138, 138-39 (1983)). However, we have repeatedly held that reprimands and demotions constitute adverse employment decisions. <u>See</u> <u>Benningfield v. City of Houston</u>, 157 F.3d 369, 377 (5th Cir. 1998)(noting that a formal reprimand constitutes an adverse employment decision); <u>Harrington</u>, 118 F.3d at 365 ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.") (citing <u>Pierce v. Texas Dep't of Crim. Justice Inst. Div.</u>, 37 F.3d 1146, 1149 (5th Cir. 1994)).

We also recognize that "a plaintiff's subjective perception that a demotion has occurred is not enough" to constitute an adverse employment decision. <u>Forsyth v. City of Dallas</u>, 91 F.3d 769, 774 (5th Cir. 1996). However, the record reflects that the Plaintiffs' transfers, viewed objectively, constitute a demotion .[5] Superintendent Brezina testified that he intended the transfers to be disciplinary in nature, and that he merely reprimanded another faculty member because her actions were not as serious as the Plaintiffs.[6] Additionally, both Brezina and Board of Trustees

---

[5]We have also recognized that a transfer not involving a reduction in pay may constitute an adverse employment decision. <u>See</u> <u>Forsyth v. City of Dallas</u>, 91 F.3d 769, 774 (5th Cir. 1996); <u>Vojvodich v. Lopez</u>, 48 F.3d 879 (5th Cir. 1995); <u>Thompkins v. Vickers</u>, 26 F.3d 603, 610-611 (5th Cir. 1994); <u>Click v. Copeland</u>, 970 F.2d 106, 109 (5th Cir. 1992); <u>Fyfe v. Curlee</u>, 902 F.2d 401 (5th Cir. 1990).

[6]Superintendent Brezina reprimanded Janice Plowman, another faulty member on the ICC, because she attended a meeting of VHS teachers at a mall concerning Principal Porche.

7

member Gutierrez testified that they could not recall a mid-term involuntary transfer of a teacher at VHS, except in one instance which resulted from a reduction in force order.[7] Gutierrez further testified that the transfers branded the Plaintiffs as "troublemakers" and "not team players." Taken together, we agree with the district court that these reprimands and transfers constitute adverse employment decisions.

**B. Was the Plaintiffs' speech on a matter of public concern?**

"In order for speech by a public employee to enjoy constitutional protection from retaliation by a public employer, the speech must involve a matter of public concern." Denton v. Morgan, 136 F.3d 1038, 1042 (5th Cir. 1998) (citing Connick v. Meyers, 461 U.S. 138, 147 (1983)). To rise to the level of public concern, the Plaintiffs' must speak primarily in their roles as citizens rather than as employees addressing matters only of personal concern. See id. (internal citations omitted). We look to the content, form, and context of the speech, as revealed by the whole record, in determining whether the Plaintiffs' speech addresses a matter of public concern. See Connick, 461 U.S. at 147-48; see also Benningfield, 157 F.3d at 375. Determining whether speech meets this threshold is a fact specific analysis. See Thompson, 901 F.2d at 461-62. Examining the Plaintiffs' speech

---

[7]This case does not involve a mere administrative change in teaching assignments, but a mid-term transfer to an entirely different school, and in Martin's case, unfamiliar subjects and grade levels.

8

in light of the above considerations, we hold that the Plaintiffs' speech was on a matter of public concern.

Brezina testified that he transferred and reprimanded the Plaintiffs as a result of their speech and actions at the December 8th ICC meeting. The Plaintiffs alleged at this meeting they told Brezina that many of the faculty believed Principal Porche was not following the improvement plan, that her replacement was necessary to alleviate the problems, and that the faculty would revolt if Brezina did not do something.[8]

The Plaintiffs emphasize that the context and form of their speech indicate it was on a matter of public concern. They contend that they spoke at the meeting as elected representatives of the faculty, and that they simply communicated the views of the faculty to the administration in compliance with their duties as committee members. The Plaintiffs point out that the stated purpose of the ICC's meeting was to check the progress of implementing the improvement plan. They argue that when they gave feedback as requested, Brezina punished them because he did not like their message.

The Defendants argue the Plaintiffs spoke only in their role as employees, and that their speech was mere criticism of their immediate supervisor's administration of the school. The

---

[8]Brezina testified in his deposition that the Plainitffs turned their chairs facing away from the Principle Porche at this meeting in an act of defiance and disrespect to both the Principal and himself, but the Plaintiffs specifically denied these actions.

Defendants interpret our cases as holding that when a public employee speaks in his role as an employee, his speech may only be considered on a matter of public concern if it involves the report of corruption or wrongdoing to higher authorities. They argue that because the Plaintiffs' speech does not fall within that limited exception, their speech is not on a matter of public concern.

The Plaintiffs' speech does not fit neatly within any of the factual scenarios in which we have held speech involved a matter of public concern. The Plaintiffs rely on cases where we have held that an employee's testimony before a fact-finding or adjudicatory body is inherently a matter of public concern. See Johnston v. Harris County Flood Control District, 869 F.2d 1565, 1577 (5th Cir. 1989); Reeves v. Claiborne County Bd. Of Educ., 828 F.2d 1096, 1100 (5th Cir. 1987).[9] While the Plaintiffs were not faced with the choice of perjuring themselves or losing their job, they were faced with the choice of either telling the truth and fulfilling their duty as committee members or keeping silent and frustrating their purpose and function on the committee. See Victor v. McElveen, 150 F.3d 451, 458 (5th Cir. 1998)("[W]hen an employee speaks in response to an invitation and on a matter pertinent to that request, the context factor weighs in his favor.") By protecting the Plaintiffs' speech when the administration requested them, as

_____

[9]Accord Green v. Philadelphia Housing Authority, 105 F.3d 882, 886 (3rd Cir. 1997) (holding that employee's voluntary testimony is also inherently a matter of public concern).

10

committee members, to speak truthfully on the school's progress, we are protecting "the integrity of the truth seeking process."  See Green, 105 F.3d 882,886 (3rd Cir. 1997).[10]

An employee's speech may contain an element of personal interest and yet still qualify as speech on a matter of public concern.  See Benningfield, 157 F.3d at 375; see also Thompson, 901 F.2d at 463-65.  The Plaintiffs certainly had an interest in their speech as employees, because they could not help but benefit as teachers from the improvement of the educational environment at VHS.  However, they also had strong interests as committee members in achieving the goals the committee set for itself and the school. The Defendants did not point to any evidence of an underlying personal dispute between the Plaintiffs and Principle Porche. There is no evidence that the Plaintiffs' speech merely concerned an employment related squabble with their supervisor.  In fact, there is evidence to the contrary, establishing that both Plaintiffs were constantly involved in attempts to raise the level of education at VHS.

Another factor considered in determining whether speech is on a matter of public concern is whether the comments were made against a backdrop of widespread debate in the community.  See Tompkins, 26 F.3d 603, 607.  Several board members testified that

---

[10]The outcome of this fact specific determination might have been different had the Plaintiffs not been committee members reporting the views of the faculty at large to the administration.

11

faculty members and parents called board members with concerns about VHS.  Board of Trustees member Margaret Easley testified that people even stopped her at the grocery store and church with concerns about the situation at VHS.  Additionally, the local newspaper ran a story indicating the low performance rating VHS received from the Texas Department of Education.  In light of the above considerations, we hold that the Plaintiffs did speak on a matter of public concern and reverse the district court.

## C. **Pickering** Balancing

We must next consider whether the Plaintiffs' interest in free speech outweighs "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees."  Victor, 150 F.3d at 457 (citing Pickering, 391 U.S. at 568.)  In striking this balance we should examine whether the speech was likely to generate controversy and disruption, impeded the school's general performance and operation, and affected working relationships necessary to the department's proper functioning.  See Brawner v. Richardson, 855 F.2d 187, 192 (5th Cir. 1988)(citing Pickering, 391 U.S. at 569-73).

The Defendants argue that the Plaintiffs' speech demonstrated their lack of commitment to the improvement plan, therefore jeopardizing the plan's success.  They assert Brezina was justified in removing the Plaintiffs from VHS's campus to allow the improvement plan to effectively resolve the problems on campus.

12

The Defendants do not offer any evidence that the Plaintiffs' speech disrupted the school's operations or performance. In fact, the improvement plan specifically designated that the content of the ICC meetings was to be confidential. The events on the campus after the Plaintiffs' transfer indicate that Brezina's conclusion was incorrect. Ultimately, both Brezina and Principal Porche were removed from VHS's campus. The Plaintiffs' speech and actions throughout the turmoil at VHS indicate their intent to improve the situation at the school rather than abandon the goals of the committee and the improvement plan. For the above reasons, we strike the balance in favor of the plaintiffs' interest in free speech.

## II. Immunity

## A. Qualified Immunity

The Defendants argue as an alternative that their qualified immunity supports the district court's grant of summary judgment, even if Plaintiff's speech is protected and they did suffer an adverse employment decision. The district court did not reach the issue.

Qualified immunity shields certain public officials performing discretionary functions from civil damage liability if their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Duckett v. City of Cedar Park, 950 F.2d 272, 279 (5th Cir. 1992) (citing Anderson v.

13

Creighton, 483 U.S. 635, 638 (1987)). Whether a defendant is entitled to qualified immunity is a two step inquiry. See Hayter v. City of Mount Vernon, 154 F.3d 269, 274 (5th Cir. 1998). The first question is whether the plaintiff alleged the violation of a clearly established constitutional right. See Seigert v. Gilley, 500 U.S. 226, 232 (1991). The second question is whether the defendant's conduct was objectively reasonable in light of clearly established constitutional law. See Hayter, 154 F.3d at 274. "Even if a defendant's conduct actually violates a plaintiff's constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." Duckett, 950 F.2d at 280.

The Defendants contend they are entitled to qualified immunity because the law concerning the Plaintiffs' type of speech was not clearly established at the time of their conduct. They argue that a right can rarely be considered clearly established when the law requires the balancing of interests in determining whether the Plaintiffs' speech is constitutionally protected. See Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992); Borucki v. Ryan, 827 F.2d 836, 848 (1st Cir. 1987). The Defendants assert they should not be punished for making an incorrect judgment call in this particular case. The Plaintiffs argue there does not have to be a case directly on point for the law to be deemed clearly established, and that existing employee speech law was clearly established under these facts. See Anderson v. Creighton,

14

483 U.S. 635, 640 (1987) ("this is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful."); see also Hassan v. Lubbock Indep. Sch. Dist., 55 F.3d 1075, 1079 (5th Cir. 1994).

The Defendants are not insulated from their unconstitutional conduct merely because a balancing test is involved in our analysis. While employee speech cases are a likely vehicle for varied fact scenarios, the law is clearly established that a "mix of public and private speech" may be constitutionally protected. Benningfield, 157 F.3d at 375; Warnock v. Pecos County, Texas, 116 F.3d 776, 782 (5th Cir. 1997)("a public employee can make a single statement both as an employee and as a citizen.")

## B.  Absolute Immunity

Board of Trustees Defendants Cain, Kornfuehrer, Pollard and Green argue they are entitled to absolute immunity because their actions in the Level III Grievance Hearing reviewing the Plaintiffs' transfer were quasi-judicial in nature. For the following reasons, we hold that the Board Member Defendants are not entitled to absolute immunity.

"It is generally understood that a judge, and those similarly situated, have absolute immunity for judicial acts." Mylett v. Mullican, 992 F.2d 1347, 1352 (5th Cir. 1993). We examine the character of a governmental officer's duties and the relationship to the parties when determining whether he is entitled to absolute

immunity.  Id. (citing Stump v. Sparkman, 435 U.S. 349 (1978)). "If the functions are of a judicial nature then we must weigh the costs and benefits of denying or affording absolute immunity." O'Neal v. Mississippi State Board of Nursing, 113 F.3d 62, 65 (5th Cir. 1997).  The following six factors are characteristics of the judicial process and are instructive in determining whether the Defendants are entitled to absolute immunity: (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversarial nature of the process; and (6) the correctability of error on appeal. See id. (citing Cleavinger v. Saxner, 474 U.S. 193, 202 (1985)).  "No one factor is controlling and the list of considerations is not intended to be exclusive." Mylett, 992 F.2d at 1353.

The Defendants rely on Hernandez v. Hayes, 931 S.W.2d 648 (Tex.App.-San Antonio, 1996, writ denied), arguing that the Texas school board grievance procedures are quasi-judicial, therefore entitling the Board of Trustees Defendants to absolute immunity. Hernandez dealt with the *absolute privilege* under Texas law granted to a witness testifying in a quasi-judicial proceeding against civil liability for defamation.  While the court held that the

16

grievance procedures were quasi-judicial in nature, it analyzed the procedure using different factors from the federal rule. See Hernandez, 931 S.W.2d at 652.

The Plaintiff's rely on the Supreme Court's decision denying absolute immunity to school board members in Wood v. Strickland, 420 U.S. 308, 320 (1975). The Court held that affording absolute immunity to school board members was unwarranted "since it would not sufficiently increase the ability of school officials to exercise their discretion in a forthright manner to warrant the absence of a remedy" for constitutional violations. Wood, 420 U.S. at 320.

While Wood dealt with a school board's discipline of a student, at least one other circuit has extended this holding to deny absolute immunity to school boards' decisions concerning a faculty member's employment. See Stewart v. Baldwin County Board of Education, 908 F.2d 1499, 1507-08 (11th Cir. 1990) (holding the Court's ruling precludes an extension of absolute immunity to board members' decision to terminate faculty member). Additionally, the record indicates that the school board members were elected, illustrating that they are not insulated from political forces as are appointed governmental officials.[11] While it is important that the school board members are able to make decisions "free from the threat of incurring personal liability for every decision they hand

---

[11]The parties failed to apply the above factors or specify any of the school board's procedures in their briefs.

17

down", O'Neal, 113 F.3d at 66, we believe that qualified immunity affords them sufficient protection. For the above reasons, we hold the Defendants are not entitled to qualified immunity.

**III. VISD's section 1983 liability**

VISD alternatively contends the Plaintiffs failed to demonstrate that constitutional violations occurred as a result of school district policy or custom. The Plaintiffs argue VISD is subject to § 1983 liability through Superintendent Brezina's actions because the Board of Trustees delegated their policymaking authority in the area of employment policy to him. Alternatively, they contend VISD is subject to liability through the Board of Trustees' actions as policymakers in affirming the Plaintiffs' transfers in the grievance hearing.

"A municipality may be held liable under § 1983 when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998) (citing Monell v. Dep't of Soc. Services of New York, 436 U.S. 658, 691 (1978)). On at least two separate occasions, we have held that the board of trustees of an independent school district in Texas is a policymaker for purposes of § 1983. See Doe, 153 F.3d at 216; Jett v. Dallas Indep. Sch. Dist., 7 F.3d 1241, 1245 (5th Cir. 1993). The Board of Trustees' action in affirming Superintendent Brezina's

18

decision to transfer the Plaintiffs was an act that "may fairly be said to represent official policy" because of the Board's status as a policymaker. <u>Doe</u>, 153 F.2d at 215. As a result, VISD's argument fails.

## CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment for the Defendants and remand to the trial court for further proceedings.

**REVERSED** AND **REMANDED**

JERRY E. SMITH, Circuit Judge, dissenting:


Federal courts have "neither the competency nor the resources to undertake to micro-manage the administration of thousands of state educational institutions." *Dorsett v. Bd. of Trustees*, 940 F.2d 121, 123-24 (5th Cir. 1991). Because the majority adopts too expansive a definition of protected speech for public employeesSSand thereby takes another step toward constitutionalizing the management of public schoolsSSI respectfully dissent.


## I.

I disagree with the majority's characterization of the plaintiffs's speech "as a matter of public concern." When analyzing this question, a court should consider the "content, form and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147-48 (1983). While determinations of whether speech is a matter of public concern are necessarily fact-specific, the majority nonetheless departs from this circuit's precedent. In particular, the majority fails properly to analyze the *content* of the plaintiffs' speech and, in doing so, lowers the requirements for plaintiffs asserting similar causes of action.


### A.

This circuit has never before held that an employee's

criticism of his immediate supervisor for mismanagement and job performance constitutes a matter of public concern. In fact, we consistently have refused to extend First Amendment protection to a public employee speaking in his role as an employee unless the speech "involves the report of corruption or serious wrongdoing."[12] The cited cases teach us that we should analyze the content of an employee's speech about his supervisor for discussion of "serious wrongdoing." This may include claims of sexual harassment or racial discrimination, for example, but should be more than simply criticisms of a supervisor's job performance or management skills.

The plaintiffs seek protection for their speech at the December 8, 1995, meeting related to questions of school management and budgetary allocations. More specifically, almost all their comments returned to the question of the ability of their direct supervisor, Porche, to lead the faculty and administer the school.

These facts distinguish this case from *Tompkins*, the most analogous fact situation cited by the plaintiffs. Here, the plaintiffs were discussing the management of their own school, whereas Tompkins had been criticizing the cancellation of a program

_____

[12] *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1050-51 (5th Cir. 1996) (holding that speech about financial assistance and handling racial discrimination does not qualify as protected speech); *see also Kirkland v. Northside Indep. Sch. Dist.*, 890 F.2d 794 (5th Cir. 1989) (reasoning that teacher's choice of curriculum does not qualify as "matter of public concern"); *cf*. *Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1266 (finding speech alleging sexual harassment a matter of public concern); *Thompson v. Vickers*, 26 F.3d 603, 606 (5th Cir. 1994) (finding speech alleging racial discrimination a matter of public concern); *Benningfield v. City of Houston*, 157 F.3d 369, 375 (5th Cir. 1998) (finding speech alleging hostile work environment and tampering with criminal histories a matter of public concern).

21

at another school. Thus, the instant plaintiffs have a much greater personal stake in the consequences of their speech.

Additionally, Tompkins had alleged that the art program had been canceled for reasons of racial discrimination on the part of his superintendent; this obviously is a higher level of wrongdoing than is alleged here. Moreover, while the plaintiffs' December 8 speech was not in relation to a threat of transfer or termination, it nonetheless focused exclusively on their direct supervisor's role in the administration of the school and resembles an employment dispute more than does Tompkins's general statement about school policy. In sum, the district court correctly followed this circuit's precedent in holding that the content of the plaintiffs' speech at the December 8 meeting does not rise to the level of "serious wrongdoing" that this court has required.

## B.

The majority also relies on the "backdrop of widespread debate in the community." But the district court found that there is little support for the plaintiffs' argument that their criticisms of Porche had been made in the context of a larger public debate over Porche's management of the high school. For instance, the court found that the single newspaper article offered by the plaintiffs did not raise any of the plaintiffs' concerns about the management of the school or of its principal. It found no other evidence of widespread public debate other than inconclusive

22

private communications between individual faculty members and the board of trustees. Therefore, the court properly refused to find that the plaintiffs' comments were made "in the context of a continuing commentary that had originated in [a] public forum." *Tompkins*, 26 F.3d at 607 (quoting *Brawner v. City of Richardson*, 855 F.2d 187, 192 (5th Cir. 1988)).

## II.

I agree with the district court that when reviewed together, the content, form, and context of the plaintiffs' speech do not sufficiently involve a matter of public concern to the degree required to receive First Amendment protection. The form of the speech does not by itself establish that it involved a matter of public concern.[13] Moreover, the plaintiffs have offered little evidence to support their argument that there was widespread public debate on the matter. Most importantly, however, the content of the speech seems narrowly focused on the performance and conduct of their direct supervisor. Without alleging seriously wrong or corrupt conduct, the plaintiffs have little basis for claiming First Amendment protection.

The Supreme Court created the "public concern" requirement to

---

[13] While I do not disagree with the majority's conclusion that the form of the plaintiffs' speech weighs in their favor, the fact that they were invited to speak does not necessarily create a "matter of public concern." The other two factorsSSespecially the content of the speechSSare key to determining that the speech was not a matter of public concern.

23

prevent "intrusive oversight by the judiciary in the name of the First Amendment." *See Connick*, 461 U.S. at 147-48. Previously, this court has followed these instructions by limiting the notion of public concern to cases of serious wrongdoing, so as to dissuade litigants from using federal courts to settle employment and management disputes. The majority departs from this approach and unwisely expands the notion of public concern to include disputes between employees and their supervisors. Accordingly, I respect-fully dissent.