Revised October 22, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-20429


DEBBIE L. BENNINGFIELD,

Plaintiff-Appellee

PEGGY FRANKHOUSER; PAMELA M. GRANT

Intervenor Plaintiffs - Appellees


VERSUS


THE CITY OF HOUSTON; ET AL

Defendants

SAM NUCHIA, Chief; RICHARD J. PFEIL; A. WADE RUNNELS; C.O. BRADFORD; ROBERT T. FLEMING; J.R. JONES

Defendants - Appellants


Appeal from the United States District Court
For the  Southern District of Texas
October 5, 1998

Before  POLITZ, Chief Judge, JONES and DUHÉ, Circuit Judges

DUHÉ,  Circuit Judge:

Defendants appeal from the denial of summary judgment on the following claims:  violation of the First Amendment (42 U.S.C. §

1983), 42 U.S.C. § 1985, tortious interference with business relations, and intentional infliction of emotional distress. The Defendants, all employees of the Houston Police Department ("HPD"), appeal the denial of their motions for summary judgment based on their qualified immunity. We affirm in part and reverse in part.

## BACKGROUND

The Plaintiffs, Debbie Benningfield ("Benningfield"), Pamela Grant, ("Grant"), and Peggy Frankhouser ("Frankhouser"), are all current or former employees of the Houston Police Department. The Defendants, Sam Nuchia ("Nuchia"), Richard J. Pfeil ("Pfeil"), A. Wade Runnels ("Runnels"), C.O. Bradford ("Bradford"), Robert T. Fleming ("Fleming"), J.R. Jones ("Jones"), are current or former employees of the Houston Police Department. In the mid-1980's, the Plaintiffs, who worked in the Identification Division ("ID"), complained of discrimination and a hostile working environment. Audra Runnels, then head of the ID, was allegedly forced to resign because of the Plaintiffs' complaints.

A. Wade Runnels, Audra Runnels's son, became the new head of ID. Allegedly, the discrimination and hostile working environment in the ID continued. According to the Plaintiffs, Runnels sought to avenge his father's termination with a campaign of retaliation against them. In addition, the Plaintiffs allege that Runnels and the other Defendants harassed and retaliated against them because they continued to report problems in the ID.

Grant contends that the Defendants' actions led to her involuntary retirement. In 1989, Runnels assigned Grant to work under Fleming. According to Grant, she was involved in a romantic relationship with Fleming that ended in the early 1980's when she learned that Fleming had sexually abused her daughter. Grant alleges that when Runnels assigned her to work under Fleming, he knew of this relationship and the reason it ended. Grant maintains that, in addition to other harassment in the ID, being forced to work under Fleming caused her emotional breakdown in 1991 and led to her medical retirement.

Frankhouser and Benningfield contend that the Defendants conducted a campaign of harassment and retaliation against them. Frankhouser maintains that she was constructively discharged because the Defendants' actions created a hostile work environment. Among other things, Frankhouser claims that Runnels and Fleming stripped her of her cadet training position at the Police Academy. In 1993, she retired from the HPD and accepted a similar position with the Montgomery County Sheriff's Department.

Benningfield alleges, among other things, that she was demoted and formally reprimanded in retaliation for her grievances. Benningfield still works for the HPD.

Benningfield sued the individual Defendants and the City of Houston in state district court. Frankhouser and Grant subsequently intervened as plaintiffs. The Plaintiffs' claimed, under Texas law, discrimination, retaliation, intentional

infliction of emotional distress, tortious interference with business relations, defamation, premises liability, and invasion of privacy. The Plaintiffs later amended their complaint to include a First Amendment claim under 42 U.S.C. § 1983 and a 42 U.S.C. § 1985 conspiracy claim.

The Defendants removed the case to federal court and moved for summary judgment based on qualified immunity. The district court denied summary judgment with regard to the § 1983, § 1985, tortious interference, and intentional infliction of emotional distress causes of action. The other claims were either dismissed by the court or withdrawn by the Plaintiffs. The individual Defendants appeal.

**DISCUSSION**

I.  Jurisdiction

Under Nerren v. Livingston Police Dept., we have "interlocutory jurisdiction to 'take, as given, the facts that the district court assumed when it denied summary judgment' and determine whether these facts state a claim under clearly established law." 86 F.3d 469, 472 (5th Cir. 1996) (quoting Johnson v. Jones, 115 S.Ct. 2151, 2159 (1995)). This interlocutory jurisdiction applies to both the federal and state law claims. See Cantu v. Rocha, 77 F.3d 795, 804 (5th Cir. 1996) (stating that "orders premised on the denial of qualified immunity under Texas state law are appealable in federal court to the same extent as

district court orders based on the denial of federal law immunity"). The standard of review is *de novo*. See Johnston v. City of Houston, 14 F.3d 1056, 1059 (5th Cir. 1994) (citing Mozeke v. International Paper Co., 856 F.2d 722, 724 (5th Cir. 1988)). Considering the facts that the district court assumed, we now consider each of the causes of action to determine which, if any, of the Plaintiffs' claims state a claim under clearly established law. For those that do we then consider whether issues of fact are present.

II. First Amendment

A First Amendment retaliation claim must include facts showing (1) that the employee's speech involved a matter of public concern, (2) that the employee suffered an adverse employment action for exercising her First Amendment rights, and (3) that the employee's exercise of free speech was a substantial or motivating factor in the adverse employment action. See Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997).

A. Matter of Public Concern

Connick v. Myers teaches that "whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." 103 S.Ct. 1684, 1690 (1983). The Court noted that "when employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the

5

community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." Id. The Court stated that review by a federal court is improper where the speech involves matters of solely personal interest. See id.; Ayoub v. Texas A & M University, 927 F.2d 834, 837 (5th Cir. 1991) (holding that a professor's complaint about a discriminatory pay scale was not a matter of public concern where the professor's complaint focused on his individual compensation).

The fact that an employee's speech contains an element of personal interest is not fatal, however. See Thompson v. City of Starkville, Miss., 901 F.2d 456, 463-65 (5th Cir. 1990). An employee's speech may contain a mix of public and private concerns. See id. at 464. In Starkville, a police officer protested improper promotions by filing grievances and aiding others in filing grievances. This court held that the officer's speech constituted a matter of public concern because his allegations of police misconduct brought attention to matters beyond purely personal interest.

Similarly, the present case involves a mix of public and private speech. Personal concerns certainly played a major role in the Plaintiffs' grievances. The Plaintiffs thought that their personal careers were being negatively affected by mismanagement, gender discrimination, and a hostile work environment.

The Plaintiffs' speech, however, contained matters of public

6

concern as well. The Plaintiffs complained about contamination of criminal histories in the ID. According to the Plaintiffs, contamination involves the wrong criminal histories being attributed to individuals. The Plaintiffs maintain that the problems with the criminal histories resulted from mismanagement and, in some instances, deliberate tampering. The integrity of and tampering with criminal histories are important to effective law enforcement and certainly a matter of public concern. See Brawner v. City of Richardson, Texas, 855 F.2d 187, 191-92 (5th Cir. 1988) (stating that "[t]he disclosure of misbehavior by public officials is a matter of public interest and therefore deserves constitutional protection, especially when it concerns the operation of a police department").

The fact that the Plaintiffs chose to file internal grievances rather than publicize their complaints is not dispositive. In Givhan v. Western Line Cosol. Dist., the Court stated:

> The First Amendment forbids abridgment of "freedom of speech." Neither the Amendment itself nor our decisions indicate that this freedom is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public. We decline to adopt such a view of the First Amendment.

99 S.Ct. 693, 696-97 (1979); See also Wilson, 973 F.2d at 1270(citing Givhan, 99 S.Ct. at 696-97); Thompson, 901 F.2d at 466-67 (stating that the fact that the plaintiff complained to his superiors rather than the public did not preclude a finding that his speech dealt with matters of public concern).

7

B.    Adverse Employment Actions

"Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." Pierce v. Texas Department of Crim. Justice, Inst. Div., 37 F.3d 1146, 1149 (5th Cir. 1994) (citing McCabe v. Sharrett, 12 F.3d 1558, 1563 (11th Cir. 1994)).  See also Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997).  In Pierce, the court declined to expand the list of actionable adverse actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech.  Pierce, 37 F.3d at 1150.

Officer Grant has failed to establish a causal connection between speech on matters of public concern and the adverse employment actions she alleges.[1]  For example, Grant was given a medical discharge after she suffered an emotional breakdown.  Grant alleges that she was discharged in retaliation for her grievances.  The evidence, however, indicates that Grant's medical retirement came as a result of an independent psychiatric evaluation.  Grant has, therefore, failed to state a First Amendment violation.

Benningfield and Frankhouser allege many acts of alleged retaliation, most of which are insufficient to constitute adverse employment actions.  Benningfield alleges that she was falsely accused of stealing criminal history records.  Similarly, Officer

---

[1]Grant's brief alleges that she was offered a day shift position to withdraw her grievance.  Her brief fails to reference specific evidence in the record supporting this claim, however, and our review of the record has found none.

8

Frankhouser alleges that she was falsely accused of attempting to sabotage the fingerprint identification system. Assuming that these allegations are true, mere accusations, without more, are not adverse employment actions. Cf. Harrington, 118 F.3d at 366 (holding that criticism did not constitute an adverse employment action).

Benningfield maintains that she was subjected to an IAD investigation in retaliation for her First Amendment activity.[2] Although a reprimand can constitute an adverse employment action, an investigation does not. See Pierce, 37 F.3d at 1150 (stating that an investigation, by itself, was not an adverse employment action). Benningfield also alleges that she was referred to the Administrative Personnel Committee ("APC") to undergo psychological testing to determine her fitness for duty. The APC referral was not an adverse employment action. Rather, the referral was designed to gather facts to form the basis for an employment decision.

Frankhouser maintains that her job performance rating was lowered in retaliation for her grievances. However, she admits that it was returned to its previous level two days after it was lowered. This does not constitute an adverse employment action.

Benningfield alleges that she was prevented from attending

---

[2]There is substantial evidence in the record indicating that Benningfield was investigated because she was away without leave for three days. For the purposes of this appeal, however, we will assume that her allegations are true.

9

certain conferences in retaliation for filing grievances. We rejected a similar claim in <u>Dorsett v. Bd of Trustees for St. Colleges & Univ.</u> 940 F.2d 121, 123-24 (5th Cir. 1988). In <u>Dorsett</u>, we found the plaintiff's complaints about teaching assignments, administrative matters, and departmental procedures insufficient to constitute adverse employment actions. We stated that "[w]e have neither the competency nor the resources to micromanage the administration of thousands of state educational institutions." <u>Id.</u> at 124. Similarly, deciding whether an officer may attend certain conferences would constitute needless micromanagement of the HPD.

Frankhouser makes claims which fail for the same reason. She contends that she was assigned an unusually heavy work load and has not received overtime and travel reimbursement due her. She also alleges that the Defendants inhibited the performance of her duties by preventing Printrak representatives from speaking directly with her. These allegations involve administrative matters and are not adverse employment actions. <u>See id.</u>

Benningfield maintains that transferring her to the night shift constituted an adverse employment action. Merely changing Benningfield's hours, without more, does not constitute an adverse employment action. A transfer may also constitute a demotion. <u>See Forsyth v. City of Dallas</u>, 91 F.3d 769, 774 (5th Cir. 1996); <u>Click v. Copeland</u>, 970 F.2d 106, 110 (5th Cir. 1992). However, the transfers in <u>Forsyth</u> and <u>Click</u> involved more than mere changes in

10

working hours and are, therefore, distinguishable.

Benningfield maintains that she was threatened with discharge and promotional pass over unless she withdrew her EEOC complaint. However, her brief fails to point to specific evidence in the record supporting this assertion. Our review of the record revealed none.

Benningfield alleges that she was formally reprimanded because of her First Amendment activities. Formal reprimands constitute adverse employment actions. See Pierce, 37 F.3d at 1149. The Defendants argue that Benningfield was reprimanded because she was away without leave ("AWOL") for three days. Benningfield maintains that her grievances are the real reason for her reprimand and that the AWOL incident is merely pretextual. However, the reprimand was rescinded though internal HPD procedures and, thus, does not constitute an adverse employment action.

Frankhouser alleges that she was verbally reprimanded. She has failed, however, to present any evidence that these "reprimands" were anything more than mere criticisms. See Harrington, 118 F.3d at 366 (holding that criticism did not constitute an adverse employment action). Thus, Frankhouser's allegations of verbal reprimands fail to state a claim.

In her affidavit, Benningfield states that Runnels demoted her while the internal affairs investigation took place. Benningfield affirms that, prior to the demotion, she was the AFIS Manager. She avers that Runnels took away her managerial title and required her

11

to report to Pfeil. See Click, 970 F.2d at 110. The fact that Benningfield's complaints resulted in the removal of Runnel's father tends to support Benningfield's claim that the demotion was a response to Benningfield's grievances.

The Defendants claim, however, that Benningfield was required to report to Pfeil because of an audit recommendation and Benningfield's AWOL incident. The audit recommendation is included in the Defendant's summary judgment evidence.

In her affidavit, Frankhouser states that Runnels and Fleming stripped her of her cadet training position at the Police Academy. This action is arguably a demotion. See id. Frankhouser's affidavit indicates that she complained of mismanagement, harassment, and retaliation in the ID. This evidence suggests that she was stripped of her training position because of her First Amendment activities.

Norbert LeBlanc ("LeBlanc"), a retired HPD officer, corroborates Benningfield's and Frankhouser's claim that they were demoted for exercising their First Amendment rights. LeBlanc affirms that he personally witnessed discrimination and retaliation by the Defendants, particularly Runnels and Fleming. LeBlanc further affirms that Runnels and Fleming retaliated against him for supporting Benningfield and Frankhouser by writing "scathing" letters to Management Review about him and putting a negative mark in his file.

There are genuine issues of material fact as to whether

12

Benningfield and Frankhouser were demoted, and, if so, whether it was in retaliation for exercising their First Amendment rights. Summary judgment should be used "most sparingly in . . . First Amendment case[s] . . . involving delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities." Porter v. Califano, 592 F.2d 770, 778 (5th Cir. 1979). Accordingly, the denial of summary judgment is affirmed with regard to the alleged demotions of Benningfield and Frankhouser.

Benningfield's promotion was delayed for two years. The Defendants maintain that the delay was not retaliation for Benningfield's First Amendment activities. Rather, they argue that the promotion was held up because of a delay in administering a required test. Further, the Defendants contend that Benningfield received retroactive pay and seniority because the test was given late. Although a refusal to promote is an adverse employment action, these facts merely indicate a delay in promotion. See Pierce, 37 F.3d at 1149 (stating that adverse employment actions include refusals to promote). We need not address whether a mere delay in promotion constitutes an adverse employment action because Benningfield received the promotion with retroactive pay and seniority.

Frankhouser maintains that she was constructively discharged. To prove a constructive discharge, Frankhouser must show that a "reasonable person in [her] shoes would have felt compelled to

13

resign." <u>Landgraf v. USI Film Products</u>, 968 F.2d 427, 429 (5th Cir. 1992) (quoting <u>Bourge v. Powell Electrical Mfg. Co.</u>, 617 F.2d 61, 65 (5th Cir. 1980)). Further, a constructive discharge claim requires a "greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." <u>Id.</u> at 430 (citing <u>Pittman v. Hattiesburg Municipal Separate School District</u>, 644 F.2d 1071, 1077 (5th Cir. 1981).

Frankhouser has not produced evidence showing that a reasonable person in her shoes would have felt compelled to resign. In fact, Benningfield, who alleges a much greater degree of harassment and retaliation than Frankhouser, is still working for the HPD. Frankhouser essentially contends that she resigned because she believed that she would be the next target of retaliation. Frankhouser's fear of future retaliation is not sufficient to support her claim of constructive discharge.

C.   Qualified Immunity

In <u>Click v. Copeland</u>, rejecting a police officer's qualified immunity defense, we stated that "a reasonable officer should have known that if he retaliated against an employee for exercising his First Amendment rights, he could not escape liability by demoting and transferring the employee rather than discharging him." 970 F.2d 106, 111 (5th Cir. 1992). Similarly, in this case, we hold that the Defendants should have known that they could not retaliate against Benningfield and Frankhouser for exercising their First Amendment rights.

14

III. §1985 Claims

The Plaintiffs assert that the Defendants conspired to interfere with the performance of their duties and to deprive them of their rights and privileges under the law. §1985(1) applies in cases of interference with federal officials in the performance of their duties. §1985(1) is not applicable to state officials. See Canlis v. San Joaquin Sheriff's Posse Comitatus, 641 F.2d 711, 717-18 (9th Cir. 1981); Baron v. Carson, 410 F.Supp. 299, 300-01 (N.D.Ill. 1976); see also Congress of Racial Equality v. Clemmons, 323 F.2d 54, 63 (5th Cir. 1963) (stating that city officials had no federal right to be protected in the performance of their municipal duties). The Plaintiffs are not federal officials and, therefore, their allegations fail to state a claim under §1985(1).

The Plaintiffs allege that the defendants conspired to deprive them of their First Amendment and equal protection rights. Under §1985(3), a corporate entity and its employees constitute a "single legal entity which is incapable of conspiring with itself." Hilliard v. Ferguson, 30 F.3d 649, 653 (5th Cir. 1994) (holding that a school board and its employees constituted a single legal entity which could not conspire with itself for § 1985(3) purposes).[3]

---

[3]The plaintiffs' reliance on Dussouy v. Gulf Coast Inv. Corp. is misplaced. 660 F.2d 594, 603-04 (5th Cir. 1981). In Dussouy, the court questioned the intracorporate conspiracy doctrine in dicta. However, the court had no occasion to rule on the vitality of the intracorporate conspiracy doctrine because Dissouy was a diversity case involving Louisiana law. See id. at 596, 602-04.

A possible exception to the intracorporate conspiracy doctrine exists where corporate employees act for their own personal purposes. See Domed Stadium Hotel, Inc. v. Holiday Inns, Inc., 732 F.2d 480, 486 n.5 (5th Cir. 1984); H & B Equipment Co., Inc. v. International Harvester Co., 577 F.2d 239, 244 (5th Cir. 1978). The Plaintiffs allege that Runnels's father was forced to resign because of their grievances and, therefore, Runnels had a personal motive for retaliating. Further, the Plaintiffs maintain that the other Defendants conspired with Runnels and aided in the retaliation.

Assuming the allegations of a personal motive are true, the Plaintiffs fail to state a claim under § 1985(3). In Hilliard, the court stated that, under § 1985(3), plaintiffs must show that the alleged conspiracy was "motivated by class-based animus." 30 F.3d at 653. Here, the Plaintiffs' allegations fail to show that the purported conspiracy was motivated by class-based animus. Rather, the Plaintiffs' § 1985(3) claim is based on the theory that Runnels' desire to get even with those who forced his father to resign was the motivation for the conspiracy.

IV. Tortious Interference with a Business Relationship

The Plaintiffs' allegations fail to state a claim for tortious interference with business relations. Generally, as agents of the city, the Defendants cannot be liable for interference with the city's contracts. See Holloway v. Skinner, 898 S.W.2d 793, 796 (Tex. 1995). An agent may be liable, however, where he acts in

16

furtherance of his own personal interests. See id. In Holloway, the court stated that, in order to prove personal interest the "plaintiff must show that the defendant acted in a fashion so contrary to the corporation's interests that his actions could only have been motivated by personal interests." Id. Proof of mixed motives is insufficient to create liability. See id.

In this case, the Plaintiffs fail to allege facts showing that the Defendants' actions could only have been motivated by personal interests. At best, the Plaintiffs' contentions indicate that the Defendants acted with mixed motives and are, therefore, legally insufficient.

V. Intentional Infliction of Emotional Distress

The district court granted the Defendants' motion for summary judgment with regard to Frankhouser on the issue of intentional infliction of emotional distress. This appeal involves only Grant and Benningfield's intentional infliction of emotional distress claims. The elements of intentional infliction of emotional distress are: (1) the defendant acted either intentionally or recklessly; (2) the conduct was extreme or outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress was severe. See Ugalde v. W.A. McKenzie Asphalt Co., 990 F.2d 239, 243 (5th Cir. 1993) (citing Dean v. Ford Motor Credit Co., 885 F.2d 300, 306 (5th Cir. 1989)).

Grant's allegations are sufficient to withstand summary judgment with regard to Runnels. Grant affirms that Runnels

17

assigned her to work under Fleming knowing that Grant and Fleming had been romantically involved and that the relationship ended when Grant discovered that Fleming had sexually abused her daughter. When Grant attempted to shield her work station from Fleming's constant view by putting partitions around her work area, Runnels allegedly removed the partitions in order to cause Grant emotional distress. Grant concludes that Runnels's actions led to her emotional breakdown and subsequent medical discharge.

In their affidavits, Benningfield and Frankhouser corroborate Grant's claim. Benningfield affirms that during Grant's emotional breakdown, Grant exclaimed "I can't take this anymore. What are they going to do to me next?" Frankhouser avers that she personally witnessed retaliation against Grant.

Memos written by Runnels and Fleming tend to support Grant's claim that her injury was caused by Runnels's actions.[4] Runnels's memo notes that the Staff Psychologist, Beverly Nichols, concluded that Grant suffered from work related stress. In addition, the memo states that, following an investigation, Grant's Injury on Duty (IOD) status was approved. In his memo, Fleming admits that Grant sustained a psychological injury on the day Runnels allegedly removed the partitions around her desk. Fleming also concedes that Grant was ruled IOD and, thus, her injury claim was covered by Workmen's Compensation.

---

[4]Runnels's and Fleming's memos are attached to Grant's affidavit as Exhibits B-2 and B-3, respectively.

Requiring an employee to work under a supervisor she dislikes would not ordinarily constitute outrageous conduct. See Wilson v. Monarch Paper, 939 F.2d 1138, 1143 (5th Cir. 1991) (noting that, in most cases, intentionally creating an unpleasant work environment does not constitute outrageous conduct). In this case, however, Grant alleges that Runnels assigned her to Fleming, knowing that Fleming sexually molested her daughter. See id. (holding that forcing a corporate executive to perform menial janitorial duties constituted outrageous conduct). Further, Texas immunity law does not protect Runnels because he allegedly acted in bad faith. See Cantu v. Rocha, 77 F.3d 795, 804 (noting that public officials must act in good faith in order to enjoy immunity under Texas law). Accordingly, we affirm the district court's denial of summary judgment as to Runnels because a genuine issue of material fact exists.

On the other hand, Grant's allegations fail to state a claim against the other Defendants because their purported actions are not sufficiently extreme and outrageous. Similarly, Benningfield's contentions fail to state a claim for intentional infliction of emotional distress against any of the Defendants. Aside from Runnels's treatment of Grant, Benningfield and Grant allege conduct which does not constitute extreme and outrageous conduct under Texas law. See id. at 1143 (creating an onerous and unpleasant work environment does not usually constitute intentional infliction of emotional distress); Ugalde, 990 F.2d at 243 (calling an

19

employee a "Mexican" and a "wetback" is not extreme and outrageous conduct).

## CONCLUSION

With regard to the Plaintiffs' § 1985 and tortious interference claims, we reverse the district court.

We affirm the district court's denial of summary judgment on Benningfield's § 1983 claim that Runnels demoted her while the internal affairs investigation was proceeding and on Frankhouser's claim [against Runnels and Fleming] that she was demoted by being removed from a cadet training position at the Police Academy. We also affirm the denial of qualified immunity as to those claims. The district court's denial of summary judgment is reversed with regard to the other § 1983 claims.

We affirm the district court's denial of summary judgment on Grant's intentional infliction of emotional distress claim against Runnels. The court's denial of summary judgment is reversed with regard to the remaining intentional infliction of emotional distress claims.

REVERSED in part; AFFIRMED in part and REMANDED.