Stephen BOYLAN, Plaintiff,

v.

Robert ARRUDA et al., Defendants.

No. 97 CIV. 5780 CM MDF.

United States District Court,
S.D. New York.

April 13, 1999.

Jonathan Lovett, Lovett & Gould, White Plains, NY, for Stephen Boylan, plaintiff.

David L. Posner, McCabe & Mack, Poughkeepsie, NY, for Robert Arruda, James Morgan, Town of Yorktown, New York, defendants.

Marc S. Oxman, Hawthorne, NY, for Marc Oxman, defendant.

AMENDED OPINION AND ORDER ACCEPTING IN PART AND RE- JECTING IN PART THE REPORT AND RECOMMENDATION OF THE HON. MARK D. FOX, AND GRANTING DEFENDANTS' MO- TION FOR SUMMARY JUDG- MENT DISMISSING THE COM- PLAINT AS TO EACH OF THEM[1]

McMAHON, District Judge.

In this matter (which I will call *"Boylan II"* to distinguish it from the other two actions filed by plaintiff Stephen Boylan against various officials of the Town of Yorktown, New York), plaintiff alleges that the defendants, Robert Arruda (the chief of Police of the Town of York- town), James Morgan (Arruda's predeces- sor in that position) and the Town[2] retali-

---

1. This amended opinion replaces the opinion issued in this case on April 7, 1999. This amendment corrects typographical errors in the penultimate paragraph of the original opinion. The ultimate outcome remains un- changed.

2. The action has been voluntarily discontin- ued as against the fourth named defendant, Marc Oxman.

ated against him for commencing his first lawsuit against the same three defendants (hereinafter referred to as "*Boylan I* "). The complaint identifies three acts of retaliation: first, that defendants Arruda and Morgan sent a letter to the Westchester County District Attorney's Office, requesting, among other things, that Boylan's charges of impropriety against the Yorktown Police Department (which had led to the filing of *Boylan I* ) be investigated; and second, that he was the subject of an unwarranted investigation, referred to the Westchester District Attorney's Office in June 1995, into whether he had engaged in credit card fraud (which resulted in the filing of no charges).[3] Defendants made a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). This Court referred that motion to The Hon. Mark D. Fox, who had presided at the jury trial of *Boylan I* pursuant to 28 U.S.C. § 636(c).[4] Magistrate Judge Fox, after converting the motion to a motion for summary judgment pursuant to Fed.R.Civ.P. 12(c), has submitted a Report and Recommendation (the "Report") in which he recommends that the complaint be dismissed as against defendant Morgan and dismissed only in part as against the other two defendants. For the reasons that follow, I accept the Magistrate Judge's recommendation and dismiss the complaint in its entirety as against Morgan. I disagree with the Magistrate Judge's conclusion as to Arruda and the Town, however, and I order the entry of summary judgment dismissing the case against them as well.

In determining the motion, I am mindful of and follow in every particular the legal precepts set forth at page two of the learned Magistrate Judge's Report concerning the standards to be applied on a motion for summary judgment.

## I. Res Judicata

Defendants have moved on two grounds. First, they contend that this action is barred by principles of res judicata and collateral estoppel. They are in error on this point, as found by Magistrate Judge Fox (who was, conveniently, the presiding judge in the first trial and the master of what was litigated and what was not). I adopt as my own his reasoning on this issue, which is to be found at pages four and five of his Report.

## II. No Adverse Employment Action

█ Defendants also argue that they are entitled to summary judgment on the ground that the conduct complained of by plaintiff does not amount to "adverse employment action" as required to sustain an action brought pursuant to 42 U.S.C. § 1983. They contend that neither the referral of Boylan's complaints to the District Attorney nor the instigation of the credit card fraud investigation constituted an "adverse employment action." Defendants urge that, under settled case law, "adverse employment action" is action that relates to a significant aspect of the employment relationship. To be an "adverse employment action," the step taken by the employer must affect the plaintiff's employment in a way that is both detrimental and substantial. *Mishk v. Destefano*, 5 F.Supp.2d 194, 202 (S.D.N.Y.1998), quoting *Bernheim v. Litt*, 79 F.3d 318, 327 (2d

---

**3.** A third claimed act of retaliation was that Oxman made certain statements adverse to plaintiff at a Town Board meeting that was broadcast on cable television. As the plaintiff has voluntarily discontinued his claim against Oxman, his claim for damages based on this act must be dismissed. In any event, an attorney's public statement concerning actions taken against a public employee, which is all that is alleged here, does not amount to

an "adverse employment action." *See infra*, Point II.

**4.** The jury in *Boylan I* returned a verdict in favor of defendants on plaintiff's First Amendment claim and for plaintiff on his selective enforcement claim. Plaintiff was awarded $1 in damages against each defendant. His appeal to the United States Court of Appeals for the Second Circuit was dismissed after he defaulted.

Cir.1996) (Jacobs, J., concurring). Certain actions clearly fall within the parameters of the phrase "adverse employment action," including dismissal, demotion, refusal to rehire, refusal to promote, and reprimand. *See, e.g., Rutan v. Republican Party,* 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 417, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Perry v. Sindermann,* 408 U.S. 593, 598, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Bernheim v. Litt, supra,* 79 F.3d at 327 (Jacobs, J., concurring). Other actions just as clearly do not, including insubstantial changes in an employee's work conditions.

While the Court of Appeals in *Bernheim* refused to parse an employee's complaint to weed out allegations that fell into the latter category on a motion to dismiss for failure to state a claim, on the ground that it would be too burdensome a task on so sparse a record, *see Bernheim,* 79 F.3d at 326, it did not preclude—indeed, it invited—such pruning on a motion for summary judgment. *Id.* This case is not in the same preliminary phase that *Bernheim* was in when the Second Circuit declined to hold that the complaint failed to state a claim. Magistrate Judge Fox has converted this motion into one for summary judgment and considered matters outside the four corners of the pleading—a wholly appropriate decision, since there was extensive discovery into the underlying facts in *Boylan I.* As I believe he was right to examine each of the allegedly retaliatory acts to see if it fell within or without the "adverse employment action" standard, I reject plaintiff's suggestion that this vio-

lates *Bernheim* and proceed to do the same.

## A. The January 1995 Letter

■ I agree entirely with the Magistrate Judge's conclusion that sending a letter concerning plaintiff's lawsuit to the District Attorney, asking that her office examine the Town's and Boylan's conduct to see if any impropriety had occurred, does not qualify as "adverse employment action." The letter in question specifically asked that District Attorney Pirro institute "a formal investigation into certain allegations of impropriety against the Yorktown Police Department, its chief [Morgan] and one of its lieutenants [Arruda]." It is difficult to see how sending this letter had any effect, let alone an adverse effect, on the plaintiff's employment. Indeed, such an investigation would seem to be precisely what plaintiff wanted when he complained of various improprieties, many of them amounting to criminal activities, in the Yorktown Police Department.[5]

■ Moreover, the defendants, having been publicly accused of heinous wrongdoing, had their own First Amendment right to respond, and no obligation to "suppress the disapproval and anger that [Boylan's] speech provoke[d]." *Bernheim v. Litt, supra,* 79 F.3d at 331 (Jacobs, J., concurring); *see also, Pavone v. Lindau,* 96 Civ. 4993(CLB), Mem. Dec., (S.D.N.Y. Dec. 17, 1997), at 4. Admittedly, Morgan and Arruda made an additional request that might not have been to Boylan's liking—they asked Mrs. Pirro to look into whether the charges had been "wrongfully brought"— but that additional request falls within the overall scope of the defendants' legitimate inquiry to the District Attorney and does not give rise to any independent constitutional violation.[6]

5. Among other things, Boylan accused Morgan and Arruda of tampering with evidence, perjury, forgery, extortion and witness tampering.

6. As noted above, the claim against Oxman has been discontinued—appropriately, in this Court's view, since Mr. Oxman is a private

citizen and cannot possibly have taken any action under color of State law. However, it bears noting that a hostile statement made about an errant employee in a public forum is also not an "adverse employment action." Plaintiff cannot insulate himself from criticism by his on-the-job foes simply by suing

Therefore, I find that plaintiffs' allegations concerning the January 1995 letter to the Westchester County District Attorney do not give rise to any constitutional violation and cannot be relied upon to sustain the two causes of action asserted in the complaint. As this is the only conduct alleged to have been committed by Morgan, I direct that summary judgment be entered dismissing the complaint as to him.

### B. The Credit Card Investigation

As Magistrate Judge Fox concluded, the question of whether Arruda's initiation of an investigation by the District Attorney's office into alleged credit card fraud by Boylan is more troublesome. The Fifth Circuit recently held that an internal investigation that does not culminate in at least a reprimand is not an adverse employment action, even if motivated by plaintiff's exercise of First Amendment rights. *See Benningfield v. City of Houston,* 157 F.3d 369, 376 (5th Cir.1998). *Benningfield* is a persuasive precedent and I would be inclined to follow it without further discussion if this case involved only an internal investigation. However, the complaint here alleges that Arruda caused an unwarranted criminal investigation to be conducted by an outside agency, and papers submitted by the defendants in support of their motion confirm that the District Attorney's office was involved and that Boylan was at a minimum forced to comply with a records subpoena. In addition, it appears that there was a parallel internal investigation, which ended with a finding of no violation and no discipline.

Defendants argue that, as no action was taken against plaintiff at work, his constitutional rights were not violated. Plaintiff urges otherwise, and also contends that a determination on this issue at this point would be premature under *Bernheim.* The Magistrate Judge expressed reluc-

tance to hold that "an unfounded criminal investigation by an outside agency, i.e., the District Attorney's office, that becomes common knowledge within both the department and the District Attorney's office and is commenced to retaliate for protected speech, cannot be considered an adverse employment action unless the investigation results in discipline." Report at 7. Moreover, he concluded that, even with the extensive deposition and trial testimony from *Boylan I* submitted to him, the factual record concerning the criminal investigation was too sparse to permit him to draw any conclusion about the bona fides of the referral at this time. *Cf., Bernheim, supra,* 79 F.3d at 326.

Because the matters alleged in this complaint were the subject of considerable discovery during *Boylan I,* the record is actually far more fulsome than one might suspect. The exhibits supporting the motion to dismiss (now a motion for summary judgment) show that the credit card matter began as an internal investigation, based on a conversation overheard by a junior officer on the force, PO Tausz, in which another officer, PO Mackay, accused Boylan of committing credit card fraud. Tausz sent a memorandum concerning this rumor to Arruda in June 1995, who referred the matter to the District Attorney for investigation. Arruda, who testified about the matter at his deposition in *Boylan I,* stated that the matter was referred so a neutral third party could assess the situation. In November 1995, the Police Department advised the District Attorney that, based on its internal investigation, the rumor had proved unfounded, and that was the end of the matter. Defendants assert that they were engaged in routine police work, which was mandated by receipt of information suggesting that a police officer may have committed a crime. Boylan alleges that this entire scenario, from rumor to resolution, was trumped up

---

them and then asserting that their responsive comments constitute retaliation. If he believes that Oxman's remarks injured his repu-

tation, he can bring an action for libel—in the courthouse next door.

by Arruda to discredit him for bringing *Boylan I.*

Notwithstanding the amount of evidence in the underlying record, I agree with Judge Fox that it would be premature to try to answer the factual questions raised by the motion—especially as there is very little evidence relating to Boylan's allegations of a frame-up.[7] But I part company with the Magistrate Judge about whether the investigation—assuming as I must that it was both unfounded and retaliatory in nature—gives rise to a cause of action under 42 U.S.C. § 1983. I conclude that it does not.

■ Defendants argue that not every adverse action (and a criminal investigation surely qualifies as an adverse action) amounts to an adverse *employment* action, which is the *sine qua non* of an aggrieved public employee's § 1983 claim for First Amendment retaliation. *Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994). As far as defendants are concerned, no action, no matter how heinous, can qualify as an "adverse *employment* action"—even if it was undertaken for purposes of retaliation—unless it results in some measurable detriment to a plaintiff on the job, or in the loss of his job. They read *Benningfield* to hold as it did, not because the allegedly wrongful investigation was confined to the department where plaintiff worked, but because it did not end in any disciplinary action against the plaintiff. Their reading is indisputably correct. The question for this Court is whether the Second Circuit, confronted with the same or similar facts, would reach the same conclusion.

The Fifth Circuit's decision in *Benningfield* rested on that Circuit's clearly enunciated rule that the term "adverse employment action" encompasses only dismissal, demotion, failure to promote, failure to rehire, and reprimand. *Id.,* 157 F.3d at 376. The Second Circuit has not enunciated such a rule—at least, not as clearly as

the Fifth Circuit has—and the United States Supreme Court has not yet gone beyond its holding in *Rutan v. Republican Party,* 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), to add retaliatory actions that do not have a demonstrably negative impact on the terms and conditions of a person's employment to the list of adverse employment actions. Our Circuit has held that conducting an investigation into an employee's alleged misconduct does not give rise to a work environment so hostile as to warrant an inference of constructive discharge, *Martin v. Citibank N.A.,* 762 F.2d 212, 221 (2d Cir.1985), but while suggestive of some hostility to an overly expansive reading of employee rights, that holding—involving an internal investigation by a private employer—is hardly determinative.

■ Although the matter is hardly free from doubt, I conclude that simply undergoing an investigation is not sufficient to constitute "adverse employment action," even though the allegedly retaliatory investigation in this case was criminal rather than civil in nature and was conducted by an outside agency rather than internally. I therefore grant the defendants' motion for summary judgment dismissing this case.

I view this result as a necessary corollary of the Supreme Court's holding in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, *rehg. denied,* 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976). In that case, the Court announced that injury to one's reputation, or "stigma," resulting from improper acts by state officials did not qualify as either a liberty or property interest for § 1983 purposes. *Id.,* at 701–02, 96 S.Ct. 1155. Harmonizing earlier Supreme Court precedents, then-Justice Rehnquist held that something more than reputational injury—either loss of liberty or loss of a governmentally-created right (such as government employment)—was required before a plaintiff could allege de-

---

7. I recognize that this lack of evidence may be because there is no such evidence, but I

cannot claim to have reviewed the entire pretrial record from *Boylan I.*

privation of a Constitutional right without due process of law.

Of course, I recognize that *Paul* and subsequent governmental libel cases were brought under the Fourteenth Amendment and alleged due process violations, while this case is brought under the First Amendment and alleges violation of the rights of free speech and petition. However, the requirement, in this and every other Circuit, that a plaintiff in a First Amendment retaliation case establish that he suffered an "adverse *employment* action," *see Blum v. Schlegel, supra,* 18 F.3d 1005, 1010 (2d Cir.1994), would appear to serve the same purpose as does *Paul*'s requirement that a liberty or property interest, not just the plaintiff's reputation, be at stake in a due process case. It takes the plaintiff's claim out of the realm of the merely defamatory and transforms it into a case of truly constitutional dimension.

In the instant case, the complaint alleges only that Boylan was stigmatized by being subjected to an unwarranted criminal investigation. (Complaint ¶ 18) As the Fifth Circuit held in *Benningfield,* a plaintiff cannot shoe-horn this particular act of retaliation into the "adverse employment action" box, because he suffered no employment consequences as a result—other than, perhaps, injury to his reputation, which is simply not enough.[8] True, the complaint also alleges that the offending investigation was instituted by his employer in retaliation for protected First Amendment activity. And the action taken by the employer was unquestionably adverse—the threat of having one's employer commence an unfounded criminal investigation could chill the exercise of an employee's First Amendment rights. But not every action that could have a chilling

effect on speech gives rise to a § 1983 claim. *Pierce v. Texas Dep't of Criminal Justice,* 37 F.3d 1146, 1150 (5th Cir.1994). Thus, if Arruda did indeed institute the District Attorney's investigation maliciously, Boylan's remedy lies elsewhere.[9]

### III. Qualified Immunity

Even if the Court of Appeals were to conclude that the above analysis is wrong, summary judgment would be appropriate as against defendant Arruda (the only remaining individual defendant) because he is entitled to qualified immunity. Qualified immunity shields government employees sued in their personal capacity from suits for damages under § 1983 unless their conduct violated clearly established rights of which an objectively reasonable official would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Neu v. Corcoran,* 869 F.2d 662 (2d Cir. 1989). If the alleged constitutional right was not clearly established at the time of the government employee's conduct, then the immunity shield applies as a matter of law. *See Harlow v. Fitzgerald, supra; see also Anderson v. Creighton,* 483 U.S. 635, 638–9, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The employee's rights must have been so clear that no reasonable public official could have believed that his actions did not violate plaintiff's rights. *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034; *see also, McEvoy v. Spencer,* 124 F.3d 92, 105 (2d Cir.1997).

Here, as was true in *Neu v. Corcoran,* the individual defendant is entitled to qualified immunity as a matter of law. The Second Circuit has never specifically addressed the question of law at issue here:

> *See Toker v. Pollak,* 44 N.Y.2d 211, 405 N.Y.S.2d 1, 376 N.E.2d 163 (1978). However, a plaintiff can overcome the privilege by pleading and proving malice. *See Sweeney v. Prisoners' Legal Services of New York, Inc.,* 84 N.Y.2d 786, 792–93, 622 N.Y.S.2d 896, 647 N.E.2d 101 (1995).

---

8. That reputational injury is the touchstone of plaintiff's complaint is confirmed by a reading of his papers opposing the motion to dismiss and his objections to Magistrate Judge Fox's Report.

9. Under New York law, reporting a potential violation of law to a law enforcement official is a qualifiedly privileged communication.

namely, whether referring an employee to law enforcement for an investigation qualifies as "adverse employment action" when the investigation terminates favorably to the employee and no employment action whatever is taken. Indeed, as far as this Court can determine, the Second Circuit has never seen quite this fact pattern, where the alleged adverse action is neither one of the widely-recognized ones (firing, refusing to rehire, refusing to promote, reprimanding) nor something that can fairly be characterized as insignificant or a matter of personal preference. *Cf. Bernheim v. Litt, supra,* 79 F.3d at 330 (Jacobs, J., concurring). That oft-cited dichotomy is meaningless under the facts of this case. Moreover, in *Benningfield, supra,* the only Circuit Court of Appeals to address a question close to the one facing this Court has ruled that no § 1983 relief is available to a plaintiff in Boylan's circumstances, and that decision was rendered three years after the allegedly offending conduct against plaintiff took place. In light of this, I find that the law of this Circuit at the time of the allegedly offending conduct did not clearly establish that Arruda's referral of the credit card matter to the District Attorney's office, unaccompanied by any action that touched on, or affected, the terms and conditions of Boylan's employment, rose to the level of a constitutional violation. Thus, Arruda is entitled to immunity with respect to both causes of action in the complaint. *See, e.g., McEvoy,* 124 F.3d at 105; *Neu v. Corcoran,* 869 F.2d at 669.

The defendants' motion for summary judgment is granted and the complaint is dismissed.